```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                              LEXINGTON
```

NATIONWIDE MUTUAL FIRE        )
INSURANCE COMPANY,            )
                              )  Civil Action No. 5:05-335-JMH
     Plaintiff,               )
                              )
v.                            )
                              )
ANTHONY CREECH, et al.,       )  **MEMORANDUM OPINION & ORDER**
                              )
     Defendants.              )

                     **    **    **    **    **

This matter is before the Court upon the motion of the plaintiff, Nationwide Mutual Fire Insurance Company ("Nationwide"), for a declaratory judgment [Record No. 16]. Defendants Anthony Adams, Monica Adams, and Trinity Adams, an unmarried minor by and through her parents Anthony and Monica Adams, (collectively, "Defendants") filed a memorandum in opposition [Record No. 17], to which Nationwide replied [Record No. 18]. Defendants Anthony Creech and Kristi Creech have not filed a response, and the response time has passed. Fully briefed, this matter is ripe for a decision.

                            **BACKGROUND**

On June 25, 2005, Anthony and Kristi Creech's pet German Shepherd, Jake, injured their three-year-old niece, Trinity Adams, during her visit to the Creeches' residence in Clark County, Kentucky. According to Nationwide, the Creeches have demanded that their homeowners insurance policy with Nationwide (hereinafter, "the Policy"), which was effective January 5, 2005 to January 5,

2006, should cover all injuries sustained by Trinity. Nationwide claims that the Policy does not provide coverage for Trinity's injuries because they were caused by a "non-licensed dog." (Compl., Ex. A Amendatory Endorsement at 5.) Nationwide contends that because (1) Clark County requires that individual dog licenses "be renewed each year on or before the last day of the month in which the dog's rabies vaccination expires" and (2) the Creeches' dog's rabies vaccination expired in September of 2004 and he was not given another vaccination until August 13, 2005, he was a "non-licensed dog" when he injured Trinity on June 25, 2005. Clark County, Ky., Ordinance No. 97-10 (July 23, 1997) (hereinafter, "the Ordinance").

In response, Defendants argue that this Court should exercise its discretion and decline to hear Nationwide's motion. In the alternative, if the Court decides to entertain the motion, Defendants maintain that declaratory relief is not warranted because Nationwide has not demonstrated that Trinity's injuries are not covered by the Policy.

## ANALYSIS

**A. The Declaratory Judgment Act**

The Declaratory Judgment Act (hereinafter, "the Act") states in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such

> declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a).[1] Whether a district court exercises jurisdiction under this statute, however, is within its discretion. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) (noting that Congress, through the Act, "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants").

The plaintiff in this declaratory judgment action is an insurance company. The defendants are the plaintiffs and defendants in another action pending in circuit court in Clark County, Kentucky. Generally, in cases in which an insurance carrier seeks a declaratory judgment in federal court about coverage when its insureds have been sued for tort liability in state court, "'declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in [the other] court.'" *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004) (quoting *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir. 1986)). Instead, this type of declaratory action is better "'filed, if at all, in the court that has

---

[1] Declaratory judgment acts are procedural rules; therefore, in a diversity case, the Federal Declaratory Judgment Act applies. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). Although Nationwide cited to Kentucky's Declaratory Judgment Act, KRS § 418.40, in its motion, this Court will consider Nationwide's motion for declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

jurisdiction over the litigation which gives rise to the indemnity problem.'" *Id.* (quoting *Manley*, 791 F.2d at 463). On the other hand, there is no "per se rule against a district court's entertaining a declaratory judgment action to determine an insurer's liability when a tort action is pending against its insured in a state court." *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 277 (6th Cir. 1990), *abrogated on other grounds by Wilton*, 515 U.S. at 289-90.

District courts should consider the following five factors in deciding whether to exercise jurisdiction over a declaratory judgment action:

> (1) whether the judgment would settle the controversy;
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
> (5) whether there is an alternative remedy that is better or more effective.

*Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000).

**B.   Propriety of Exercising Jurisdiction**

To determine whether it is appropriate to exercise jurisdiction in this matter, the Court will apply the above factors to the facts of this case.

   1.   *Whether the judgment would settle the controversy*

In *Omaha Property & Casualty Ins. Co. v. Johnson*, 923 F.2d 446

4

(6th Cir. 1991), an insurance company, whose insured was the defendant in a state court negligence suit based on his son's auto accident, sought a declaratory judgment that the accident was not covered by the auto insurance policy.  The district court found that "the son had no reasonable belief of his entitlement to use the car," and based on that finding, "the court interpreted the provisions of the policy to deny coverage." *Id.* at 447.  On appeal the father and son argued that "the state court . . . had left for the jury questions of fact on the liability issues and that these questions were of the same nature as the questions of fact underlying the coverage issue." *Id.*  The Sixth Circuit found that the district court had erred by exercising jurisdiction in the matter:  "The decision of the court below creates a potential conflict with the state court on a question of state law. . . . Rather than settling the issues presented in the litigation, dual decisions are likely to simply confuse matters." *Id.* at 448.  In *Bituminous Casualty Corp. v. J & L Lumber Co.*, the Sixth Circuit examined a district court's decision to decide a declaratory judgment action while two state court actions were pending and when "all three courts had to address the identical question of whether the [injured party] was an employee of [the insured]." *Bituminous Casualty*, 373 F.3d at 813.  Noting several reservations, including the possibility of inconsistent judgments among the state and federal courts and the fact that a declaration of insurance

5

coverage would not resolve the controversy because the injured party was not made a party to the declaratory judgment action, the Sixth Circuit concluded that this factor weighed against exercising jurisdiction. *Id.* at 813-14.

In the case *sub judice*, a declaratory judgment would resolve the controversy over whether the Policy covers Trinity Adams's injuries. Unlike the situations in *Omaha Property & Casualty* and *Bituminous Casualty*, the very issue Nationwide seeks to be adjudicated in this Court — whether the Creeches' dog was a "non-licensed dog" on June 25, 2005 — is not pending before the Clark County Circuit Court. Accordingly, the Court finds that the first factor weighs in favor of exercising jurisdiction.

> 2. *Whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue*

A declaratory judgment in this action would clarify the legal relations between Nationwide and all of the defendants. *See Scottsdale*, 211 F.3d at 968 ("[A] prompt declaration of policy coverage would surely 'serve a useful purpose in clarifying the legal relations at issue.'"). The action pending before the state court does not turn on whether the Creeches' dog was a "non-licensed dog." Answering the question of whether the Creeches' insurance policy provides coverage under these circumstances may not assist the state court in resolving the issues before it, but it will not conflict with the state court's conclusions and it will serve a useful purpose in clarifying and settling the legal

6

relations to the extent that they arise from the Policy. *See Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 453 (6th Cir. 2003). Based on this reasoning, the Court finds that this factor weighs in favor of exercising jurisdiction.

> *3. Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"*

Defendants note that Nationwide filed this declaratory judgment action a mere six weeks after Trinity was injured and that Nationwide filed this action before they brought suit against the Creeches in Clark County Circuit Court. Acknowledging this time line, the Court finds no indication that Nationwide seeks a declaratory judgment as a means of "procedural fencing" or as part of a "race for res judicata." *Scottsdale*, 211 F.3d at 968. Nationwide is not a party to the underlying state court suit, and insurance coverage does not appear to be an issue in the suit brought against the Creeches in state court. There is no support for the argument that Nationwide has filed this action in an attempt to obtain a favorable judgment in this Court while avoiding the risk of an adverse ruling in state court. It appears that Nationwide merely chose this forum in which to seek a declaration regarding the scope of coverage. Accordingly, the Court does not find any evidence of an improper motive in Nationwide's filing of this action.

> *4. Whether the use of a declaratory action would increase the friction between our federal and state courts and*

7

*improperly encroach on state jurisdiction*

District courts consider the following three additional factors when undertaking the analysis under the fourth factor:

> 1. whether the underlying factual issues are important to an informed resolution of the case;
> 2. whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> 3. whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory action.

*Id.* (citing *Wilton*, 515 U.S. at 277). Regarding the first consideration, Defendants argue that resolution of the insurance coverage issue necessarily requires resolution of certain factual issues. Specifically referring to the letter submitted by Kristi Creech in which she states that Nationwide's agent told her that her claim would be covered, Defendants argue that factual issues exist as to whether Nationwide is estopped to deny coverage. Nationwide, on the other hand, contends that the facts relevant to the coverage issue are undisputed and that, as a result, the issue before this Court is solely a question of law. The relevant provision in the Policy is an exclusion stating that "Coverage E – Personal Liability, and Coverage F — Medical Payments to Others, do not apply to bodily injury or property damage: . . . caused by any of the following animals owned by or in the care of an insured: . . . (6) Any non-licensed dog." (Compl., Ex. A Homeowners Ins.

8

Policy at 10; Amendatory Endorsement at 5.)  Nothing in the submissions of either Nationwide or Defendants suggests any factual disputes the resolution of which are necessary to determine the scope of the policy exclusion.[2]  As there are no factual disputes that must be resolved prior to addressing the insurance coverage issue, the Court finds that this first consideration weighs in favor of exercising jurisdiction.  Because the second consideration — whether the state court is in a better position to evaluate those factual issues than is the federal court — necessarily implies that facts are in dispute, this consideration is inapplicable.

With respect to the third consideration, the insurance coverage issue is governed solely by Kentucky law.  *Hanover Ins. Co. v. Am. Eng'g Co.*, 33 F.3d 727, 730 (6th Cir. 1994) (applying Kentucky law in a diversity insurance case).  Defendants maintain that because Kentucky courts have yet to address an insurance policy provision regarding the term "licensed," a state court would be the appropriate venue in which to interpret the provision.  *See*

---

[2] Whether Nationwide's agent told Ms. Creech that her claim would be covered is not a factual issue important to an informed resolution of the case.  The Policy contains the following language: "A waiver or change of a part of this policy must be in writing by us to be valid."  Because the Creeches' policy "expressly limits the agent's authority to alter the conditions of the policy, [the Creeches are] chargeable with notice of those limitations" on the agent's authority. *Ky. Farm Bureau Mut. Ins. Co. v. Cann*, 590 S.W.2d 881, 884 (Ky. Ct. App. 1979).  Under Kentucky law, the Creeches were charged with notice that Nationwide's agent could not alter the terms of the Policy so as to provide coverage for injuries caused by their non-licensed dog.

*Scottsdale*, 211 F.3d at 968-69 ("[I]t would be inappropriate 'to preempt the right of the state court to rule on a previously undetermined question of state law.'" (quoting *Omaha Property & Casualty*, 923 F.2d at 448)); *see also Allstate*, 913 F.2d at 279 ("[S]tates regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation."). Although Kentucky courts have not specifically interpreted the term "licensed" in this context, this Court's decision to exercise jurisdiction and to apply Kentucky law to interpret the term would not frustrate any state law or policy.[3]

---

[3] Unlike the situation in *Scottsdale*, whether the incident giving rise to damages is covered by the Policy is not an issue in the state court action. *See Scottsdale*, 211 F.3d at 966 ("In the state court proceedings the issue arose as to whether Scottsdale's applicable policy limits in the case were $3,000,000 or only $100,000 under the special endorsement."). The scope of insurance coverage is not before the state court; therefore, as stated by the Sixth Circuit in *Northland*, "a decision by [this Court] on these issues would not offend the principles of comity." *Northland*, 327 F.3d at 454.
   This Court's decision to interpret the term "non-licensed" is distinguishable from that of the court's decision in *Bituminous Casualty Corp. v. Combs Contracting Inc.*, 236 F. Supp. 2d 737, 746 (E.D. Ky. 2002) to decline to interpret the term "occurrence." In that case, the court recognized that it could not "make an informed resolution of the coverage issues under the definition of 'occurrence'" in the insurance policy's provisions without deciding whether the insured acted intentionally. *Id.* at 745. If the federal court exercised jurisdiction, it would have been forced to decide the same issue as the state court, thereby risking inconsistent judgments and improperly resolving factual issues on liability that were pending in the state court. In this case, because the issue of whether the Creeches' dog was "non-licensed" is not before the state court, the same risks are non-existent.

10

Despite the absence of Kentucky law interpreting this term, it does not appear that a declaratory judgment would create friction between the state and federal courts.

    5.    *Whether there is an alternative remedy that is better or more effective*

Regarding the final factor, and as noted by Defendants, Nationwide could file a declaratory judgment action under KRS § 418.040 in state court, or it could move to intervene in the state court action filed by the Adamses. *See* KRS § 418.040 ("In any action in a court of record of this Commonwealth having general jurisdiction wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights . . . and the court may make a binding declaration of rights."). The Sixth Circuit has held that a state court civil action on indemnity issues is usually "a better and more effective remedy than a declaratory judgment action in federal court." *Combs Contracting*, 236 F. Supp. 2d at 746 (citing *Allstate*, 913 F.2d at 278; *Manley*, 791 F.2d at 462-63; *American Home Assurance Co. v. Evans*, 791 F.2d 61, 62 (6th Cir. 1986); *Northern Ins. Co. of New York v. Addison Products*, Inc., 148 F. Supp. 2d 859, 863 (E.D. Mich. 2001)). As previously stated, however, this Court's prompt declaration of policy coverage would clarify the legal relations between Nationwide and all defendants. Moving for a declaratory judgment or intervening in the state court action would not necessarily have provided a better or more effective remedy, and it

11

appears that Nationwide decided, based on its own reasoning, to bring the declaratory action in federal court rather than state court.

On balance, these factors weigh in favor of exercising jurisdiction, and this Court will address Nationwide's motion for declaratory judgment.

**C.   Nationwide's Motion for Declaratory Judgment**

To resolve this controversy, this Court must interpret the language of an exclusion in the Creeches' homeowners insurance policy.  Interpretation of an insurance policy is a question of law.  *K.M.R. v. Foremost Ins. Group*, 171 S.W.3d 751, 753 (Ky. Ct. App. 2005) (citing *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky. Ct. App. 1998)).  In *K.M.R.*, the court noted "two cardinal principles pertinent to [its] task" of interpreting a clause in an insurance policy:  "(1) the contract should be liberally construed and all doubts resolved in favor of the insureds; and (2) exceptions and exclusions should be strictly construed to make insurance effective."  *Id.* (citations omitted).  Clear and unambiguous terms in a contract must be construed according to their "plain and ordinary meaning."  *Id.* (quoting *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131-32 (Ky. 1999)).  In the absence of ambiguities, "the terms of a policy of insurance are to be enforced as written." *Goodman v. Horace Mann Ins. Co.*, 100 S.W.3d 769, 772 (Ky. Ct. App. 2003).  Unless they have "acquired a technical meaning in law," the

terms in an insurance policy are to be interpreted "according to the usage of the average man and as they would be read and understood by him in light of the prevailing rule that uncertainties must be resolved in favor of the insured." *Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205, 206 (Ky. 1986).

The Policy provides coverage for "damages the insured is legally obligated to pay due to bodily injury or property damage" and for "the necessary medical and funeral expenses incurred within one year after an accident causing bodily injury," subject to several exclusions, including the following: "Coverage E - Personal Liability, and Coverage F — Medical Payments to Others, do not apply to bodily injury or property damage: . . . caused by any of the following animals owned by or in the care of an insured: . . . (6) Any non-licensed dog." (Compl., Ex. A Homeowners Ins. Policy at 9-10; Amendatory Endorsement at 5.)

Nationwide asserts that the exclusion is clear:  Through the Policy, Nationwide excluded coverage for injuries caused by "non-licensed" dogs, and the Ordinance requires that in order for a dog to be properly licensed, it must receive an annual rabies vaccination.  It is undisputed that as of June 25, 2005, the day the Creeches' dog injured Trinity Adams, the dog had not received a rabies vaccination since September 25, 2003.  The parties agree that the Creeches' dog had not received its annual rabies vaccination in September of 2004, the month in which its rabies

13

vaccination expired.  *See* Clark County, Ky., Ordinance No. 97-10 (July 23, 1997) ("Individual dog licenses shall be renewed each year on or before the last day of the month in which the dog's vaccination expires.").  Based on those undisputed facts, Nationwide concludes that the Creeches' dog was a "non-licensed dog," when it bit Trinity Adams on June 25, 2005; therefore, under the exclusion in the Policy, there is no coverage for Trinity's injuries.

The Court agrees with Nationwide's conclusion and finds that Defendants' arguments in response are unavailing.  Defendants complain that the Ordinance is highly ambiguous and that the language is not straightforward.  Defendants claim that the Ordinance may be interpreted to mean that an expired tag is all that is necessary to comply with the law.  This interpretation is unreasonable and conflicts with Kentucky law.  KRS § 258.135 provides, in pertinent part:  "The governing body of each county may establish an animal licensing program by ordinance.  It shall be the responsibility of each county to administer and enforce its licensing program."  Under KRS § 258.015, dog owners must have their dogs vaccinated against rabies, and the veterinarian who vaccinates the dog "shall also furnish each dog owner with a rabies tag bearing a serial number corresponding to the vaccination certificate with the year of immunization."  KRS § 258.015.  Finally, KRS § 258.087 provides that "[a]ny city, county,

urban-county, charter county, or consolidated local government may, by the adoption of an appropriate ordinance or resolution, provide for more stringent regulation of rabies control in dogs, cats, ferrets, and other animals than set forth in KRS 258.005 to 258.087." Clark County has clearly chosen to require that dogs in the county receive yearly vaccinations.

Considering the plain and commonly understood meaning of the words "license," "permission from a constituted authority to do something," "expire," "to come to an end," and "renew," "bring back into use or existence," the Court concludes that, pursuant to the Ordinance, dogs that do not receive yearly rabies vaccinations are not properly licensed. Oxford English Dictionary (2d ed. 1989), http://dictionary.oed.com. If the owner fails to renew his or her dog's license by having the dog vaccinated "on or before the last day of the month in which the dog's rabies vaccination expires," the dog's license expires. Clark County, Ky., Ordinance No. 97-10 (July 23, 1997).

As to the exclusion in the Policy, Defendants argue that the doctrine of reasonable expectations serves to prevent Nationwide from denying coverage for Trinity's injuries. Although they cite to *Woodson v. Manhattan Life Ins. Co.*, 743 S.W.2d 835 (Ky. 1987) for the admonition that "[o]nly an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat" an insured's reasonable expectations of coverage,

15

Defendants never explain how the language in the Policy is ambiguous. *Id.* at 839. Defendants have presented no evidence that ambiguities in the Policy led the Creeches to reasonably expect that the Policy would cover injuries caused by a non-licensed dog. The only reasonable interpretation of this clear, specific exclusion in the Policy is that Nationwide will not cover injuries caused by a dog that is not licensed.[4]

Kentucky law provides that counties may establish licensing programs, and Clark County has established a licensing program that requires dog owners to have their dogs vaccinated yearly for rabies. As the Kentucky Court of Appeals found in its review of Jefferson County's animal control ordinance in *Bluegrass Boarding and Training Kennels v. Jefferson County Fiscal Court*, 26 S.W.3d 801 (Ky. Ct. App. 2000), "vaccination and licensing are intertwined." *Id.* at 804. That statement aptly describes Clark County's ordinance as well. The relevant, undisputed facts of this

---

[4] The Supreme Court of Ohio addressed very similar issues in *Kaplysh v. Takieddine*, 519 N.E.2d 382 (Ohio 1988). Haifa Takieddine's driver's license expired twenty-one days before she was involved in a car accident while she was driving a car rented by her brother-in-law. He had purchased automobile insurance through the rental agency, and the rental agreement provided that "[u]nder no circumstances shall vehicle be used, operated or driven . . . by any person except Renter, or a qualified licensed driver." *Id.* at 384. The rental agency refused to provide coverage for the accident because Ms. Takieddine was not a "licensed driver" due to her expired license. The Supreme Court of Ohio agreed and held that "because the rental agreement stated that only the renter and qualified *licensed* drivers could operate the rental vehicle, [the rental agency] is not required to indemnify and defend Haifa Takieddine." *Id.* at 386.

16

case lead to the conclusion that the Creeches' dog was not licensed on June 25, 2005, because its rabies vaccination expired in September of 2004.[5] Per the exclusion in the Creeches' homeowners insurance policy, the injuries to Trinity Adams caused by the Creeches' dog are not covered by their policy.

## CONCLUSION

Accordingly, and for the foregoing reasons, **IT IS ORDERED**:

(1)  That Nationwide's motion for a declaratory judgment [Record No. 16] be, and the same hereby is, **GRANTED**; and

(2)  That Nationwide is not liable under the Policy for any injuries sustained by Trinity Adams arising out of the Creeches' dog biting her.

This the 18th day of May, 2006.



**Signed By:**
*Joseph M. Hood*
**United States District Judge**

---

[5] Whether the dog received yearly vaccinations before September of 2003, whether the dog was vaccinated after June 25, 2005, whether the dog actually had rabies, whether the Centers for Disease Control and Prevention supports annual rabies vaccination for dogs, and whether the Creeches were cited for violating the Ordinance are all irrelevant issues that have no bearing on whether the Creeches' dog was a "non-licensed dog" on June 25, 2005.